UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINDA JACKSON,

      Plaintiff,

vs.                                                          Case No.  3:05-cv-1252-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion. **I. PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on January 9, 2002, alleging an inability to work since April 20, 2001.  (Tr. 65-67). The Social Security Administration ("SSA") denied this application initially and upon reconsideration. (Tr. 29, 31).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on December 9, 2003.  (Tr. 42, 824-94).  On April 15, 2005, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 19-28).  Plaintiff subsequently filed a Request for Review by the Appeals Council.  (Tr. 10).  The Appeals

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 8 and 11).

1

Council denied Plaintiff's request for review on October 7, 2005. (Tr. 6-9). Accordingly, the ALJ's April 15, 2005 decision is the final decision of the Commissioner. Plaintiff timely filed her Complaint in the U.S. District Court on December 8, 2005. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since April 20, 2001, due to a cervical injury, low back pain, sciatica, loss of balance, headaches, numbness in her hands, sleep deprivation, depression and anxiety.

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was fifty-five years of age. (Tr. 19, 827). She has a masters degree in educational leadership. (Tr. 828). Plaintiff has past relevant work as an elementary school teacher, curriculum resource teacher, adult education instructor, attendance clerk and elementary school principal. (Tr. 19, 68, 100-01). Plaintiff's medical history is discussed in the ALJ's decision. By way of summary, the medical records submitted reveal that in August 2000, Plaintiff suffered an on-the-job injury in which she hurt her neck. (Tr. 134). Plaintiff took medication, received facet injections and was placed on light duty, however, as of April 2001, Plaintiff was no longer able to work as a result of the pain in her neck and back. Id. Plaintiff also claims the pain caused her to suffer depression and anxiety. The medical records reflect Plaintiff's treatment for both her physical and mental impairments and the Court will discuss both.

#### 1. Plaintiff's Physical Impairments

On May 29, 2001, Plaintiff underwent surgery, an anterior cervical diskectomy/fusion,

bone graft and plate fixation at C5-6 of her cervical spine.  (Tr. 168-69).  This procedure was performed by Dr. Mark A. Spatola.  On November 21, 2001, Dr. Spatola placed Plaintiff at MMI for her surgery but not for her injury.  (Tr. 237).  Dr. Spatola reviewed Plaintiff's cervical MRI films and noted evidence of fusion and no spinal cord compression.  Id.  He also noted a metallic artifact at C5-6 and was unable to rule out underlying pathology at C6-7, but determined Plaintiff was not a candidate for further surgery and therefore, discharged her from his care.  Id.  Dr. Spatola recommended Plaintiff be referred to either pain management or a rehabilitation specialist for further treatment.  Id.

On February 5, 2002, Plaintiff presented for an initial evaluation with Dr. Ronald W. Dennie, M.D., a specialist in physical medicine and rehabilitation.  (Tr. 331-35).  She was complaining about pain in her neck and thoracic back.  (Tr. 331).  Dr. Dennie diagnosed Plaintiff with status post cervical laminectomy 1993 without residuals, status post cervical fusion with instrumentation secondary to cervical intervertebral disc syndrome, chronic intractable pain, cervical radiculitis, and craniocervical syndrome.  (Tr. 334).  Dr. Dennie placed Plaintiff on Lorcet and Robaxin and thought Plaintiff would benefit from a course of percutaneous nerve stimulation treatment for pain control.  (Tr. 335).  Plaintiff returned for a follow-up visit with Dr. Dennie on June 5, 2002.  (Tr. 327).  During this visit, Plaintiff complained of increased arm numbness as well as hand weakness as a result of a fall she sustained.  Id.  Dr. Dennie remarked that if Plaintiff's symptoms did not improve, a repeat cervical spine MRI or EMG and nerve conduction studies may be necessary.  Id.  Plaintiff returned to Dr. Dennie on October 24, 2002 complaining of increased neck and shoulder girdle pain.  (Tr. 324).  Dr. Dennie noted that the worker's compensation company was going to proceed with Plaintiff's functional capacities evaluation in the near future.  Id.  The

report also indicates that Plaintiff was placed on Percocet and continued to take Robaxin. Id.

On October 25, 2002, Plaintiff underwent a physical capacity evaluation ("PCE"). (Tr. 337-46). During the evaluation, Plaintiff demonstrated inconsistent effort and as a result, the evaluator could not determine Plaintiff's true capabilities. (Tr. 337-38). Indeed, the report states: "[t]here was no job analysis available for Ms. Jackson; however, due to her inconsistent effort, her actual physical capabilities must be left to conjecture." (Tr. 338).

Plaintiff returned to Dr. Dennie's office on February 13, 2003 and it was noted she was "doing a bit better since the Percocet was increased" and that she was able to function. (Tr. 357). The report also indicated Plaintiff experienced some exacerbation of her pain after her new yellow Labrador retriever strained on its leash. Id. Plaintiff returned on March 12, 2003, at which time it was noted she was experiencing partial pain control on her current medications. (Tr. 355). The report also states Plaintiff was independent in activities of daily living, but that her overall level of activity remained sedentary to light. Id.

Two non-examining physicians completed Physical RFC Assessments on Plaintiff on May 13, 2002 and September 5, 2002. (Tr. 285-92, 316-23). The first assessment was completed by Harry L. Collins, Jr., M.D. Dr. Collins determined Plaintiff was occasionally able to lift up to 20 pounds, frequently able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on her ability to push or pull with her upper and lower extremities. (Tr. 286). Dr. Collins also determined Plaintiff could occasionally stoop, kneel, crouch and crawl and that she was limited in her ability to reach overhead. (Tr. 287-88). Finally, Plaintiff was to avoid concentrated

exposure to hazards such as machinery or heights. (Tr. 289).

The second assessment was completed by Nicholas H. Bancks, M.D. and was virtually identical to the first RFC assessment except that it noted Plaintiff should never climb ladders, ropes or scaffolds and that she could only occasionally balance and could frequently kneel. (Tr. 318).

On November 5, 2002, Plaintiff's attorney drafted a letter to Dr. Dennie in which he summarized the doctor's findings and asked Dr. Dennie to check that he either agreed with the summary or disagreed with it. (Tr. 347-48). The letter stated:

> Based upon your evaluations and review of the functional capacity evaluation, it was your opinion that the highest level of activity that [Plaintiff] could return to would be a sedentary job but that it would be unlikely that she would be able to perform full time work on a consistent basis.

(Tr. 348). Dr. Dennie simply checked the line indicating he agreed with the summary. Id.

On November 3, 2003, Plaintiff's family physician, Dr. Saxena, completed a Medical Assessment of Ability to do Work Related Activities (Physical). (Tr. 540-43). In this form, Dr Saxena opined Plaintiff could only occasionally lift up to twenty pounds. (Tr. 540). Dr. Saxena found Plaintiff was not able to frequently lift any weight and that she could only occasionally carry up to ten pounds. (Tr. 540-41). Dr. Saxena also opined that Plaintiff could sit for five hours, stand for two and walk for one hour in an eight-hour day and that Plaintiff could only occasionally use her hands for simple grasping and fine manipulation. (Tr. 541-42). Additionally, Dr. Saxena found Plaintiff unable to climb, balance (without the use of an assistive device), stoop or crouch but found her able to occasionally kneel and crawl. (Tr. 542). Finally, Dr. Saxena noted Plaintiff's mental status would be affected by her medications for pain and anxiety. (Tr. 543).

Plaintiff underwent a lumbar spine MRI on October 14, 2003, which revealed moderate spinal stenosis with bilateral lateral recess narrowing at L4-5, mild disk bulge and facet disease at L3-4, and disk bulge with a small central protrusion at L5-S1.  (Tr. 544).

### 2. **Plaintiff's Mental Impairments**

On November 5, 2001, Plaintiff underwent an initial psychiatric evaluation by Dr. Carlos Torrellas.  (Tr. 378-80).  Dr. Torrellas noted that Plaintiff was alert and oriented to person, place and time and spoke clearly and coherently without evidence of racing thoughts or pressured speech.  (Tr. 379).  Plaintiff's mood was depressed and her affect, tearful.  Id.  Her insight and judgment were fair and Dr. Torrellas found her attention span, memory and concentration were not impaired:

> as evidenced by the ability to remember 3 objects after 5 minutes and remember and repeat a series of numbers.  She can do serial 7's to "0".  She is able to recall historical dates and events.  She knows the current and the past president.  She can remember current events.  She does admit to having problems focusing at times.  Her ability to abstract is intact and she can interpret a common adage (A rolling stone gathers no moss).  She is able to spell her name and the word "world" backwards.  She is able to follow a 3-step command.  The patient remained attentive throughout the interview.

Id.  Dr. Torrellas diagnosed Plaintiff with Adjustment Disorder with depressed mood, Panic Disorder without Agoraphobia and Somatoform Disorder.  (Tr. 380).  He assigned her a GAF of 51.[2]

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994). A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers).  Id. at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job).

Plaintiff continued to receive treatment with Dr. Torrellas and his nurse practitioner, Donna Spronzo, from November 2001 through October 2003.  The notes from Plaintiff's treatment sessions indicate Plaintiff's condition generally improved with medication although she continued to experience occasional panic attacks and bouts with depression.

On May 9, 2002, Plaintiff underwent a consultative examination with Dr. Joseph Hartman, Ph.D.  (Tr. 282-84).  Dr. Hartman noted that Plaintiff was oriented as to person, place and time and that Plaintiff was able to identify the current and one of the two preceding presidents.  (Tr. 283).  Dr. Hartman found Plaintiff's immediate memory to be below average in that Plaintiff could retain four but not five digits forward and failed to retain four or five digits backward.  Id.  Plaintiff's recent memory was also below average as she could not retain any of three common object names after a nine minute interval.  Id.  Plaintiff's longer-term memory seemed intact and her concentration was mixed.  (Tr. 283-84).

On May 9, 2002, Alejandro F. Vargara, M.D., a state agency medical consultant completed a Psychiatric Review Technique form ("PRTF") on Plaintiff.  (Tr. 268-81).  Dr. Vargara determined that Plaintiff's mental impairments did not constitute severe impairments because they resulted only in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies in concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.  (Tr. 278).  Dr. Vargara specifically noted that Plaintiff's mental condition was not severe and that if Plaintiff had any disability, it would have to be physical in nature.  (Tr. 280).

---

Id.

On September 3, 2002, a second state agency medical consultant, Timothy D. Foster, Ph.D., completed another PRTF and determined Plaintiff had no limitations as a result of her mental impairments. (Tr. 312). Dr. Foster noted that the records from Dr. Torrellas show Plaintiff had experienced improvement with her medication and that Plaintiff herself attributed her inability to work on her physical, rather than mental, limitations. (Tr. 314). Dr. Foster found no severe mental limitations. Id.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through the date of the decision. (Tr. 20, 27). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, April 20, 2001. Id. At steps two and three, the ALJ held:

> The medical evidence indicates that the claimant has a history of an anterior cervical fusion and discectomy, history of a lateral menisuscal [sic] tear of left knee with surgical repair, history of obesity with intestinal bypass and history of depression and anxiety, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination [] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 25).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform a substantial range of light and sedentary work. Id. Specifically, the ALJ found Plaintiff could "lift/carry up to 20 pounds occasionally, 10 pounds or less on a more frequent basis." Id. Additionally, the ALJ determined Plaintiff was able to stand and/or walk and sit for six hours out of an eight hour work day so long as she had an option to sit/stand/walk as needed to relieve pain or discomfort. Id. The ALJ also found Plaintiff able to occasionally stoop, kneel, crouch, crawl and climb stairs or ramps; but Plaintiff should not climb ropes, ladders or scaffolds. Id. Finally, Plaintiff should avoid exposure to hazards, including moving machinery and unprotected heights. Id. The ALJ determined Plaintiff suffered from "fairly mild" psychological problems given her "lack of any substantial on-going treatment," and therefore, the ALJ did not adopt any functional limitations as a result of her mental impairments. Id. In making his findings regarding Plaintiff's RFC, the ALJ found Plaintiff's

testimony concerning her impairments and their impact on her ability to work to be "not fully credible to the extent that she is disabled from all work." (Tr. 26).

At step four, the ALJ determined Plaintiff retained the ability to perform her past relevant work as an elementary school teacher, elementary school principal or attendance officer, either as she performed them or as they are routinely performed. Id. Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27, 28).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan,

932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues two issues on appeal. First, Plaintiff believes the ALJ erred by failing to properly consider Plaintiff's mental impairments. Second, Plaintiff argues the ALJ erred by failing to fully evaluate the medical evidence. The Court will address each of these issues.

#### 1. Whether the ALJ properly considered Plaintiff's mental impairments

Plaintiff argues the ALJ erred by failing to properly consider Plaintiff's mental impairments. Specifically, Plaintiff takes issue with the ALJ's decision to discount the report completed by Dr. Torrellas on November 10, 2003 regarding Plaintiff's ability to do work-related mental activities. (Tr. 699-700). As Dr. Torrellas was a treating physician, the ALJ is required to give his opinions substantial weight unless there is good cause to do otherwise. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, is wholly conclusory or inconsistent with the doctor's own medical records. See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir.

2004) (citing, Lewis, 125 F.3d at 1440); Jones v. Dept. of Health & Human Services, 941 F.2d 1529, 1532-33 (11th Cir. 1991).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

In his decision, the ALJ specifically referenced Dr. Torrellas's November 10, 2003 report and stated that he rejected it.  (Tr. 24).  The ALJ provided several reasons for his rejection of this report.  The ALJ noted that Plaintiff had been seen only briefly for counseling from July 2002 through July 2003 and that Plaintiff was primarily seen by Donna Sponzo, a nurse practitioner, rather than Dr. Torrellas.  Id.  The ALJ also noted that Dr. Torellas only saw Plaintiff perhaps two or three times after his initial assessment in 2001 and based on his review of the handwriting on the November 10, 2003 report, the ALJ concluded that Ms. Sponzo prepared the report and that Dr. Torrellas simply signed it.  Id.  Additionally, the ALJ noted that Dr. Torrellas's statements and observations in his progress notes did not support the marked restrictions in the form.  Id.

After an independent review of the medical records, the Court finds the ALJ did not

err by rejecting Dr. Torrellas's November 10, 2003 report.  In his initial evaluation in November 2001, Dr. Torrellas specifically noted that Plaintiff had no impairments in her attention span, memory or concentration. (Tr. 379).  However, in completing the form on Plaintiff's ability to do work-related activities, Dr. Torrellas rated Plaintiff as poor (meaning "no useful ability to function" in the categories of: carrying out detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual; working with or near others without being distracted by them; completing a normal workday or workweek; performing at a consistent pace; responding appropriately to changes in the work setting; traveling in unfamiliar places or use public transportation; and setting realistic goals or making plans independently of others.  (Tr. 699-700).  Additionally, Dr. Torrellas rated Plaintiff as fair (meaning "the individual can perform the activity satisfactorily some of the time") in the categories of: remembering locations and work-like procedures; understanding and remembering short, simple instructions; understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; making simple work-related decisions; interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers; and being aware of normal hazards and taking appropriate precautions. Id.

     The medical records reveal that Plaintiff sought counseling from Dr. Torrellas or the nurse practitioner in his office, Donna Sponzo approximately seventeen times from November 2001 through October 2003.  The vast majority of the progress notes indicate Plaintiff was doing well on her medications with the occasional entry indicating Plaintiff felt very depressed or had several panic attacks.  The medical records do not support the

dramatic limitations noted in Dr. Torrellas's report. As such, the undersigned finds the ALJ's rejection of Dr. Torrellas's report is supported by substantial evidence.

### 2. Whether the ALJ properly considered the medical evidence

Plaintiff also claims the ALJ failed to consider and discuss four specific pieces of evidence. Initially, Plaintiff alleges that a state agency doctor found Plaintiff limited to sedentary work and limited Plaintiff's use of her upper extremities to occasional overhead use. (Doc. 12, pp. 6-7). Plaintiff also claims the ALJ failed to consider the opinion of Plaintiff's treating physician, Dr. Saxena, who limited Plaintiff to sedentary work and restricted her to occasional simple grasping or fine manipulation. (Doc. 12, p.7). Additionally, Plaintiff believes the ALJ improperly failed to mention her diagnosis of moderate spinal stenosis, which Plaintiff believes should be considered in determining whether she met a listing. Id. Finally, Plaintiff argues that the ALJ erred in failing to consider the limitations by both Drs. Dennie and Saxena that Plaintiff should not use her hands and arms for repetitive activity. Id.

As for Plaintiff's arguments regarding the state agency doctor's opinion that Plaintiff was limited to sedentary work, the Court finds no error. As the Commissioner correctly points out, both of the state agency doctors evaluating Plaintiff's RFC found Plaintiff able to perform light work. Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job in this category could require a good deal of walking or standing, or, when it involves sitting most of the time, could involve pushing or pulling of arm or leg controls. Id. Both of the state agency doctors determined Plaintiff was able to occasionally lift up to 20 pounds, frequently lift and/or carry 10 pounds; stand and/or walk (with normal

breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on her ability to push or pull with her upper and lower extremities.  Accordingly, the state agency doctors found Plaintiff able to perform light work.

Plaintiff is correct, however, that both state agency doctors found her limited in her ability to reach overhead (Tr. 288,319) and that the ALJ failed to address these findings. Additionally, it is clear the ALJ failed to address Dr. Saxena's opinions that Plaintiff should be limited to sedentary work and that she was only occasionally able to perform simple grasping and fine manipulation with both hands.  The Commissioner acknowledges that the ALJ did not reference Dr. Saxena's report, however, argues that the ALJ must have considered the report because he stated that he considered reports from all treating physicians and because he included a sit/stand/walk option in his RFC.  (Doc. 15, p.10).

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination.  See 20 C.F.R. §§404.1520(a), 416.920(a).  In addition, the ALJ must state the weight afforded to the evidence considered.  Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence."  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).  Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting, Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)).

15

Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In this case, Plaintiff is correct that the ALJ failed to discuss Dr. Saxena's November 3, 2003 report in which she concluded Plaintiff was limited to sedentary work and only occasionally able to perform simple grasping and fine manipulation with both hands. (Tr. 540-43). The Court finds this report to be significantly probative evidence in that it directly contradicts the ALJ's finding that Plaintiff was able to perform light work. As such, the ALJ was required to at least explain his reasoning for rejecting the report. Despite the Commissioner's argument to the contrary, the ALJ's decision does not sufficiently reveal whether the ALJ considered the report. Simply stating that he considered reports from all treating physicians is not enough. Ryan, 762 F.2d at 942 (finding ALJ's statement that he "carefully considered all of the testimony at the hearing, the arguments made, and the documents described in the List of Exhibits" is not enough to establish what legal standards were applied or the weight accorded to the evidence) (citing, Cowart, 662 F.2d at 735).

The Commissioner also claims that the ALJ's failure to reference Dr. Saxena's report does not require remand because Dr. Saxena's treatment notes provide only minimal objective findings and therefore, the ALJ was permitted to accord her assessment only limited weight as her opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the record as a whole. (Doc. 15, p.10). While that may be true, the Court cannot discern from the ALJ's decision whether he rejected Dr. Saxena's opinion or simply failed to consider it. The ALJ did not mention Dr. Sexena's findings regarding Plaintiff's ability to lift and/or carry or the restrictions placed on

her arms and hands.

Moreover, Dr. Saxena was a treating physician. As noted above, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d). When an ALJ elects to disregard the opinion of a treating physician, the ALJ must clearly articulate his/her reasons for so doing. Id. Here, assuming the ALJ rejected Dr. Saxena's opinions, he provided no explanation for such rejection. As such, remand is appropriate.

As for the limitations regarding Plaintiff's hands and arms placed by Dr. Dennie, the undersigned is convinced the ALJ properly considered this evidence. Indeed, the ALJ's decision specifically notes that he considered the letter sent to Dr. Dennie but did not find it particularly persuasive as Dr. Dennie's notes indicated that he needed to wait for the results of the Functional Capacity Examination before he could make any conclusions regarding Plaintiff's ability to function. (Tr. 23). However, the results of the Functional Capacity Examination failed to provide any meaningful assessment of Plaintiff's ability and therefore, the ALJ did not find the letter to Dr. Dennie especially persuasive. The ALJ provided a sufficient reason for discounting the opinion of a treating physician and the Court finds no error.

Finally, Plaintiff argues the ALJ erred in failing to consider Plaintiff's diagnosis of moderate spinal stenosis. The ALJ's decision, however, specifically notes the results of the October 14, 2003 MRI revealing spinal stenosis at L4-5. (Tr. 23). Accordingly, the contention that he failed to consider the evidence is without merit. In any event, a review of Dr. Saxena's report indicates several limitations on Plaintiff's ability to work as a result of her

17

spinal stenosis as of November 3, 2003. Accordingly, upon remand, after the ALJ reviews Dr. Saxena's report, he is directed to consider whether Plaintiff's spinal stenosis is a severe impairment at this time.

In sum, Dr. Saxena's November 3, 2003 report is significant probative evidence and the ALJ erred in failing to discuss it. As such, the case will be remanded for the ALJ to consider all the relevant evidence of record and to reevaluate Plaintiff's RFC. The Court expresses no view as to what evidence the ALJ should accept or reject, however, the ALJ should fully articulate his reasons for rejecting any significant probative evidence.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall (1) consider Dr. Saxena November 3, 2003 report and the findings by the state agency doctors that Plaintiff was limited in her ability to reach above her head; (2) reevaluate Plaintiff's RFC in light of this evidence; (3) articulate specific and adequate reasons for rejecting any significant probative evidence; and (4) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  31st  day of August, 2006.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record